**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                          :
                                                      :
       Plaintiff,                              : Civil Action No. 1:21-cv-4925
                                                      :
v.                                                    :
                                                      : **COMPLAINT FOR VIOLATIONS OF**
PROOFPOINT, INC., GARY STEELE,                        : **SECTIONS 14(a) AND 20(a) OF THE**
DANA EVAN, ELIZABETH RAFAEL,                          : **SECURITIES EXCHANGE ACT OF**
JONATHAN FEIBER, KEVIN HARVEY,                        : **1934**
KRISTEN GIL, LEYLA SEKA, MICHAEL                      :
JOHNSON, and RICHARD WALLACE,                         : **JURY TRIAL DEMANDED**
                                                      :
       Defendants.                             :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Proofpoint, Inc. ("Proofpoint or the "Company") and the members Proofpoint board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Proofpoint by Thoma Bravo FCStone Inc. ("Thoma Bravo") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on June 2, 2021 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Project Kafka Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Project Kafka Parent, LLC ("Parent"), will merge with and into Proofpoint with Proofpoint surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Both Parent and Merger Sub are affiliated entities of Thoma Bravo. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Proofpoint common share issued and outstanding will be converted into the right to receive $176.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Proofpoint stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Proofpoint stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Proofpoint trades on the NASDAQ Stock Exchange, which is headquartered in this District. Further, Proofpoint's proxy solicitor, D.F. King & Co., Inc., is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Proofpoint common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Gary Steele has served as a member of the Board since 2002 and is the Company's Chief Executive Officer and Chairman of the Board.

11. Individual Defendant Dana Evan has served as a member of the Board since June 2008.

12. Individual Defendant Elizabeth Rafael has served as a member of the Board since February 2021.

13. Individual Defendant Jonathan Feiber has served as a member of the Board since July 2002.

14. Individual Defendant Kevin Harvey has served as a member of the Board since December 2002.

15. Individual Defendant Kristen Gil has served as a member of the Board since October 2017.

16. Individual Defendant Leyla Seka has served as a member of the Board since September 2019.

17. Individual Defendant Michael Johnson has served as a member of the Board since July 2017.

18. Individual Defendant Richard Wallace has served as a member of the Board since May 2017.

19. Defendant Proofpoint is incorporated in Delaware and maintains its principal offices at 925 West Maude Avenue, Sunnyvale, California 94085. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "PFPT."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.    The Proposed Transaction**

22. Proofpoint operates as a security-as-a-service provider that enables large and mid-sized organizations to defend, protect, archive, and govern their sensitive data worldwide. It offers protection against advanced and targeted threats, including malicious attachments, polymorphic

4

threats, zero-day exploits, user-transparent drive-by downloads, malicious web links, hybrid threats, malware free attacks, and other penetration tactics. The Company also provides integrated email security, cloud security, threat protection products, information protection and archiving, and digital risk protection product services. In addition, it offers solutions that enable secure business-to-business and business-to-consumer communications; email encryption services that encrypt sensitive emails and deliver them to PC or mobile device; file-transfer solutions for end-users to share various forms of documents and other content; security optimized cloud architecture solutions; and security-as-a-service platform consisting of solutions, platform technologies, and infrastructures. The Company serves governments, education, financial services, and healthcare sectors; small and medium businesses; and mobile operators and Internet service providers. Proofpoint has a partnership with Relativity ODA LLC to integrate Proofpoint platform with Relativity Trace to deliver an end-to-end archive and communication surveillance solution. The Company was incorporated in 2002 and is headquartered in Sunnyvale, California.

23. On April 26, 2021, Proofpoint and Thoma Bravo jointly announced that they had entered into a proposed transaction:

> SUNNYVALE & SAN FRANCISCO, Calif., April 26, 2021 -- Proofpoint, Inc. (NASDAQ: PFPT) (the "Company"), a leading cybersecurity and compliance company, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading private equity investment firm focused on the software and technology-enabled services sector, in an all-cash transaction that values Proofpoint at approximately $12.3 billion.
>
> Under the terms of the agreement, Proofpoint shareholders will receive $176.00 per share in cash, representing a premium of approximately 34 percent over Proofpoint's closing share price on April 23, 2021, the last full trading day prior to the transaction announcement, and a premium of approximately 36 percent over Proofpoint's three-month volume-weighted average closing share price through April 23, 2021. Upon completion of the transaction,

Proofpoint will become a private company with the flexibility and resources to continue providing the most effective cybersecurity and compliance solutions to protect people and organizations around the world. Additionally, Proofpoint will benefit from the operating capabilities, capital support and deep sector expertise of Thoma Bravo – one of the most experienced and successful software investors in the world.

"Today's announcement is a testament to the strength of Proofpoint's people-centric approach to cybersecurity and compliance and underscores our important role preventing, defending and responding to today's threats," said Gary Steele, Chairman and CEO of Proofpoint. "We have made tremendous strides in expanding the sophistication and scale of our offerings, and in 2020 we generated more than $1 billion in annual revenue – making Proofpoint the first SaaS-based cybersecurity and compliance company to reach that milestone. We believe that as a private company, we can be even more agile with greater flexibility to continue investing in innovation, building on our leadership position and staying ahead of threat actors. Thoma Bravo is an experienced software investor, providing capital and strategic support to technology organizations, and our partnership will accelerate Proofpoint's growth and scale at an even faster pace. This is an exciting new chapter for Proofpoint that would not have been possible without our employees' hard work and commitment to our customers, partners and each other."

Dana Evan, Lead Independent Director of the Proofpoint Board of Directors, said, "We are confident that this transaction is a great outcome for our shareholders, our employees, our customers and our Company. Following Thoma Bravo's approach, we thoroughly reviewed the proposal with the assistance of independent financial and legal advisors. We determined this premium, all-cash offer and partnership would create immediate and certain value for shareholders and help us achieve our operational and market ambitions more quickly for the benefit of our customers. Today's announcement is a credit to the Proofpoint team which has delivered outstanding operating performance without ever losing sight of our customers, positioning the Company to capture significant value for our shareholders."

"Proofpoint has achieved tremendous outcomes for customers around the world, and we're excited to partner with this talented team at a moment when organizations need innovative solutions to navigate an increasingly treacherous cybersecurity environment," said Seth Boro, a Managing Partner at Thoma Bravo. "Proofpoint

places people at the center of its compliance and security strategy and plays a vital role in helping enterprises protect their data. Thoma Bravo's approach to value creation is rooted in partnering with the organization in which we invest and looking for opportunities to both enhance their existing operations and build technology platforms that drive significant growth. Proofpoint's opportunity as a privately held company is incredibly compelling, and we look forward to working closely with them to drive continued business growth and deliver world-class advanced threat protection to even more customers in even more ways."

"Proofpoint has established itself as a true powerhouse in the cybersecurity sector due to its innovative suite of market-leading products and impressive customer base of leading companies around the world," said Chip Virnig, a Partner at Thoma Bravo. "As the sophistication of cyberattacks continues to increase, Proofpoint is delivering the most effective solutions to help organizations protect their data and people across digital platforms. We look forward to partnering with the talented Proofpoint team and leveraging Thoma Bravo's significant security and operational expertise to help accelerate the Company's growth."

**Transaction Details**

Proofpoint's Board of Directors ("the Board") has unanimously approved the agreement with Thoma Bravo and recommends that Proofpoint shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The agreement includes a 45-day "go-shop" period expiring on June 9, 2021, which allows the Board and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. The Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Proofpoint does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

The transaction is expected to close in the third quarter of 2021, subject to customary closing conditions, including approval by Proofpoint shareholders and receipt of regulatory approvals. Upon closing of the transaction, Proofpoint's common stock will no longer

be listed on any public market. The Company will continue to be headquartered in Sunnyvale, California.

**First Quarter 2021 Financial Results**

In a separate press release, Proofpoint today announced its first quarter fiscal year 2021 financial results. The press release is also available on the Investor Relations section of the Company's website. In light of the announced transaction with Thoma Bravo, Proofpoint has cancelled its earnings conference call previously scheduled for April 29, 2021.

**Advisors**

Morgan Stanley & Co. LLC is acting as exclusive financial advisor to Proofpoint, and Skadden, Arps, Slate, Meagher & Flom LLP is acting as its legal counsel. Financing for the transaction is being provided by Goldman Sachs & Co. LLC. Goldman Sachs & Co. LLC is also serving as financial advisor to Thoma Bravo, and Kirkland & Ellis LLP is serving as its legal counsel.

\* \* \*

24. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Proofpoint's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

25. On June 2, 2021, Proofpoint filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Proofpoint Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Proofpoint management and relied upon by Morgan Stanley in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Proofpoint management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analysis*

31. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by Morgan Stanley in the analysis; (ii) the Company's levered cash flow ("LFCF") provided to

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Morgan Stanley by Proofpoint's management for calendar years 2021 and 2022; (iii) publicly available consensus equity analyst research estimates for calendar years 2021 and 2022 for the Company; (iv) the basis for selecting the representative ranges of fully diluted equity value to LFCF multiples.

32. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) range of implied present equity values per share of Proofpoint stock on a standalone basis; (ii) calendar 2023 LFCF estimates under each of the Street Consensus and Management Plan; (iii) the basis for applying a discount rate of 8.1%; (iv) Proofpoint's estimated cost of equity; and (v) Proofpoint's fully diluted share count as provided by Proofpoint's management.

33. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal values for the Company; and (ii) the inputs and assumptions underlying the range of discount rates ranging from 7.1% to 9.0%.

34. With respect to Morgan Stanley's *Precedent Transactions Multiples Analysis*, the Proxy Statement fails to disclose: (i) the closing and announcement dates of each transaction observed; and (ii) the basis for selecting the representative ranges of the fully diluted equity value to the estimated NTM LFCF multiples of the transactions.

35. With respect to Morgan Stanley's *Illustrative Precedent Premiums* analysis, the Proxy Statement fails to disclose: (i) the closing and announcement dates of each transaction observed; (ii) each acquired company's closing share price on the last trading day prior to announcement; and (iii) the basis for selecting the representative range of premia.

36. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets*, the Proxy Statement fails to disclose: (i) the price targets observed for the Company; (ii) the equity research analysts noted in the analysis; (iii) the basis for applying a 8.1% discount rate.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by Morgan Stanley and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Proofpoint within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Proofpoint, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Proofpoint, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Proofpoint, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 3, 2021                                      **MELWANI & CHAN LLP**

By:  /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*